IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**DAVID W.,**

          **Plaintiff,**

v.                               **Civil Action 3:24-cv-00255**
                                   **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

          **Defendant.**

## OPINION AND ORDER

Plaintiff, David W., brings this action under 42 U.S.C. § 405(g) and seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The Court **OVERRULES** Plaintiff's Statement of Errors, (Doc. 11), and **AFFIRMS** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff protectively applied for DIB on April 17, 2023, alleging disability beginning September 1, 2018, due to post-traumatic stress disorder, depression, anxiety, sleep apnea with CPAP, and insomnia. (R. at 178–84, 214). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on April 29, 2024. (R. at 37–62). Then, the ALJ denied benefits in a written decision on May 10, 2024. (R. at 15–36). The Appeals Council denied Plaintiff's request for review, making the ALJ's opinion the Commissioner's final decision. (R. at 1–7).

On September 20, 2024, Plaintiff filed the instant case seeking a review of the Commissioner's decision, (Doc. 1), and the Commissioner filed the administrative record on

December 3, 2024. (Doc. 10). The matter is fully briefed and ready for the Court's review. (Docs. 11, 13, 14).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony about his mental health impairments:

\*\*\* At the hearing, [Plaintiff] testified that he needs to reread things multiple times in order to retain the information. However, [Plaintiff]'s memory has been assessed and reported as good, intact, or negative for problems (see, for example, Exhibits 1F at 7, 49, 122, 188, 258, 2F at 7, 3F at 22, 60). \*\*\*

\*\*\* At the hearing, [Plaintiff] testified that he has some problems interacting one-on-one with others, being in a crowded place can trigger an anxiety attack, and that, while working, he had numerous confrontations with both supervisors and co-workers. Nevertheless, [Plaintiff] has repeatedly been observed as pleasant and/or cooperative during examinations (see, for example, Exhibits 1F at 6, 48, 92, 143, 187, 253, 3F at 20, 59) despite reporting anxiety attacks around others (Exhibit 1F at 241). Today, he lives with his spouse and three children full-time, and two additional children occasionally, indicating at least a baseline ability to interact appropriately and effectively with others. Additionally, he did not appear to have difficulties answering questions or relating at the hearing. \*\*\*

\*\*\* He also testified that he has difficulty staying on-task, as he is easily distracted. On the other hand, [Plaintiff]'s attention and concentration have been consistently reported as normal or intact during mental status examination findings (see, for example, Exhibits 1F at 9, 61, 132, 231, 253, 3F at 26, 60). At the hearing, [Plaintiff] testified that he is able to maintain sufficient attention and concentration to watch documentaries or other shows about history. \*\*\*

\*\*\* [Plaintiff] has also complained of having anxiety attacks around others (Exhibit 1F at 241). At the hearing, [Plaintiff] testified that he suffers from "irrational anxiety" and PTSD after being deployed for combat tours. He has nightmares between weekly and four times a week and constant feelings of paranoia. Despite this, [Plaintiff]'s judgment and insight have been variously assessed as good, intact, or at least fair (see, for example, Exhibits 1F at 9, 61, 132, 153, 222[,] 243, 257, 3F at 26, 60). While his medications do not totally control his impairments, they do help make him functional per his testimony. \*\*\*

(R. at 25–26).

2

As to his physical health, Plaintiff testified that, despite his impairments, he can complete various home improvement projects, including carpentry, plumbing, and electrical work. (*See* R. at 50–51 (saying he remodeled his basement and "re-plumbed" his "entire house")). When asked at the hearing how his physical impairments impacted his ability to work, Plaintiff responded:

> *** I did have back pain, part of which is hereditary. When I . . . was in Afghanistan I started feeling some back pain and I couldn't get the military doctors to listen to me. Of course they try to blow you off. And it wasn't until probably three years later that I finally got a doctor to listen to me. Then I went to get an MRI scan and turns out I had three bulging discs and severe arthritis. I was 34 when that diagnosis was made. So I, I do, I've had a few injections into my spine and in my, you know, spinal column and stuff. And sometimes it works for a little while. But I, just find, you know, as time's gone on, you know, I can't sit for long periods of time. I can't stand for long periods of time. So you know, a sustained work rate for me is not, it's not something like I can necessarily do anymore like I used to.
>
> I could probably stand for about 20 or 30 minutes, you know, doing physical, manual labor. And then depending on the severity of the pain, I may have to, you know, stop for another 30 minutes or, you know, I also have a, I suffer from back spasms. So if that happens I usually just, I have to stop for the rest of the day and usually take one of my muscle relaxers in order to reverse that problem. So you know, a sustained work rate for me is not, it's not something like I can necessarily do anymore like I used to.

(R. at 51–52).

   **B.**   **Relevant Medical Evidence:**

In determining Plaintiff's residual functional capacity, the ALJ discussed Plaintiff's medical records and symptoms:

> The exertional, reaching, postural, climbing, and hazard exposure limitations noted above are based on [Plaintiff]'s degenerative disc disease and osteoarthritis. His spinal condition is substantiated by the April 2019 impression of mild cervical degenerative disc disease by David Miller, M.D., based on a review of x-ray imaging (Exhibit 1F at 305). Between at least April 2019 and January 2020, treatment providers including Sanjay N. Patel, D.C., and Shelby J. Farrell, D.C., diagnose [Plaintiff] with lower back pain, cervical and lumbosacral spondylosis, and cervical, thoracic, lumbosacral, and pelvic segmental and somatic dysfunction (see, for example, Exhibit 1F at 163, 196).

3

[Plaintiff]'s osteoarthritis is substantiated by the May 2022 impression of mild right acromioclavicular, glenohumeral, and knee osteoarthritis by Eric Brandser, M.D., based on a review of x-ray imaging completed as part of a consultative examination requested by the Division of Disability Determination (DDD) (Exhibit 2F at 10-11).

Nevertheless, despite his spinal condition and osteoarthritis, [Plaintiff] has maintained full (5/5) strength, intact grip strength, normal range of motion, and a normal gait on examinations (Exhibits 2F, 3F). Diagnostic imaging also has shown no more than mild findings (Exhibits 1F, 2F). Additionally, he has required no more than conservative care for his physical conditions.

The environmental exposure limitations noted above are based on [Plaintiff]'s respiratory impairments. Asthma appears in lists of [Plaintiff]'s active medical problems, and sleep apnea appears in lists of factors contributing to a VA disability determination (see, for example, Exhibits 1F at 55, 3F at 13). Nonetheless, treating providers indicated [Plaintiff]'s asthma was only mild in severity and [Plaintiff] has sought and required minimal and only conservative treatment for his respiratory impairments (Exhibit 1F). There also is no objective evidence of decreased alertness or lack of orientation related to his reported lack of sleep.

The task, decisional, production, pacing, social interaction, and work routine limitations noted above are based on [Plaintiff]'s mental impairments. On multiple occasions between at least December 2018 and April 2019, Kelly S. Obert, Psy.D., or her supervisees, variously diagnosed [Plaintiff] with an adjustment disorder with mixed anxiety and depressed mood, chronic post-traumatic stress disorder (PTSD), recurrent and moderate major depressive disorder, and an anxiety disorder (see, for example, Exhibit 1F at 194, 153). On numerous occasions between at least January 2019 and January 2024, Pravesh B. Patel, M.D., diagnosed [Plaintiff] with chronic PTSD and dysthymia (see, for example, Exhibits 1F at 9, 49, 94, 144, 203, 232, 3F at 27). On multiple occasions between at least January 2019 and November 2021, treatment providers including Megan P. Haulman, R.N., and Vickie S. Burch, N.P., noted diagnostic assessments of anxiety, depression, and PTSD (see, for example, Exhibit 1F at 65, 136, 139, 227).

Yet, [Plaintiff] has consistently evidenced good objective mental status examination findings despite his conditions. Between July 2021 and May 2023, treatment notes consistently indicate [Plaintiff] is alert and oriented with normal speech, mood, thought process, thought content, memory, attention, fund of knowledge, and vocabulary and fair insight and judgment (Exhibit 1F). Although he had a depressed mood and constricted affect in August 2023, the remainder of his mental status examination was unremarkable (Exhibit 3F). By November 2023, his mental status examination was normal and in January 2024, [Plaintiff] reported his depression and mood were better despite ongoing anxiousness and reported panic attacks, and he continued to evidence normal finding during mental status examination (Exhibit 3F). [Plaintiff] also has required no more than conservative

> care for his mental health symptoms, with good response shown to medication, as evidenced by his consistently good mental status evaluation findings, as well as [Plaintiff]'s own statements of feeling well at times (Exhibits 1F, 3F).
>
> The mental health-based work-related functional limitations noted above are specifically based on the impacts [Plaintiff]'s mental impairments have on his abilities in each of the paragraph B areas of functioning. Turning to those areas, [Plaintiff] experiences a mild limitation in his ability to understand, remember, or apply information. At the hearing, [Plaintiff] testified that he needs to reread things multiple times in order to retain the information. However, [Plaintiff]'s memory has been assessed and reported as good, intact, or negative for problems (see, for example, Exhibits 1F at 7, 49, 122, 188, 258, 2F at 7, 3F at 22, 60). Given the repeated and consistent positive assessments in the medical record, the undersigned finds that [Plaintiff]'s subjective complaints indicate, at most, only a slight limitation in his ability to function in this area.

(R. at 24–26).

    **C.**    **The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements through December 31, 2023, and has not engaged in substantial gainful activity from his alleged onset date of September 1, 2018, through his date last insured of December 31, 2023. (R. at 20). Next, the ALJ determined that he cannot find Plaintiff eligible for disability benefits earlier than May 17, 2022.[1] (R. at 21). The ALJ then concluded that, during the relevant period, Plaintiff suffered from the severe impairments of degenerative disc disease, mild osteoarthritis of the right shoulder and right knee, asthma, sleep apnea, depression, anxiety, and post-traumatic stress disorder. (*Id.*). But the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*).

---

[1] Plaintiff previously filed an application for DIB, which was denied by an ALJ determination on January 26, 2022. Therefore, the ALJ found "[t]he issue of [Plaintiff]'s disability status from the alleged disability onset date of September 1, 2018, through May 16, 2022, [was] already decided." (R. at 21).

5

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to light work as defined in 20 CFR 404.1567(b), with the following exceptions: No more than frequent stooping, kneeling, crouching, crawling, reaching with the bilateral upper extremities, or climbing of ramps and stairs. No climbing of ladders, ropes, and scaffolds. [Plaintiff] should avoid concentrated exposure to atmospheric conditions, as defined in the Selected Characteristics of Occupations, as published by the U.S. Department of Labor (S.C.O.), and all exposure to unprotected heights, dangerous moving machinery, and commercial driving. [Plaintiff] can understand, remember, and carry out simple instructions, perform routine, short-cycle tasks, and use judgment to make simple, work- related decisions. [Plaintiff] can perform goal-oriented work, such as that of an office cleaner, but is unable to perform at a production-rate pace, as would be required for assembly line work or other jobs with fast pace demand. No more than occasional and superficial contact, as defined, with supervisors and co-workers; no contact with the general public as part of job duties. No teamwork, tandem tasks, conflict resolution or over-the-shoulder supervision. No more than occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustment to new expectations.

(R. at 23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 27).

Through the date last insured, the ALJ determined that Plaintiff was unable to perform his past relevant composite job of a construction-equipment mechanic, combat rifle crewmember, and senior enlisted advisor. (R. at 30). The ALJ relied on testimony from a vocational expert to find that Plaintiff could perform other work in the national economy, such as a merchandise marker, routing clerk, or inspector and hand packager. (R. at 31–32). Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 1, 2018, the alleged onset date, through December 31, 2023, the date last insured. (R. at 32).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff challenges two parts of the ALJ's decision. First, he contends that the ALJ improperly evaluated the medical opinion of consultative examiner Dr. Swedberg. (Doc. 11 at 6–13). Second, he says the ALJ erred by not adopting or addressing certain limitations recommended by the state agency reviewing psychologists. (*Id.* at 13–15). The Court addresses each assignment of error in turn.

### A. Analysis of Dr. Swedberg's Opinion

For Dr. Swedberg's opinion, Plaintiff alleges that the ALJ did not evaluate the consistency factor. (Doc. 11 at 6–13). The Commissioner responds that he did. (Doc. 12 at 5–9). Upon review, the Court finds that the Commissioner has the better read.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations,"

7

based on all the relevant evidence in his file. *See* 20 C.F.R. § 404.1545(a)(1). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). For medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must weigh the opinion with various factors in mind. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). Among them, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2); *see also* 20 C.F.R. § 404.1520c(c)(2) (noting the ALJ may discuss the other factors but is not required to do so).

Relevant here, when evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). In other words, this factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (quotation and emphasis in original removed). But the ALJ does not need to use "any specific phrasing to comply with the applicable regulations." *Id.* (noting that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim" (internal quotation omitted)). Instead, the ALJ's role is to "articulate how [he] considered the medical opinions and how persuasive [he finds] all of the medical opinions." *Holston v. Saul*, No. 1:20-cv-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021) (internal quotation and quotation marks omitted).

Dr. Swedberg examined Plaintiff on May 22, 2022. (R. at 617–24). During that examination, Plaintiff attributed his inability to work to an injury to his left hand's third finger. (R. at 622 (saying the injury caused difficulties when Plaintiff handled small objects or tied his shoes)). But Dr. Swedberg found Plaintiff had normal range of motion and full strength in all his appendages, including his hands. (R. at 617–24). Plaintiff also exhibited normal reflexes, intact sensation, and no tenderness to palpation. (R. at 623–24). Further, Plaintiff walked with a normal gait, stood on either leg, squatted without difficulty, and sat comfortably. (*Id.*). All told, Dr. Swedberg reported a normal physical examination. (R. at 624). Consequently, he found that Plaintiff can perform a "moderate to marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects" and has no difficulty "reaching, grasping, or handling objects." (*Id.*). Dr. Swedberg also recommended no visual, communication, or environmental limitations. (*Id.*).

Finding this opinion "partially persuasive," the ALJ explained:

> Dr. Swedberg personally examined [Plaintiff] and conducted musculoskeletal testing. While he noted a "normal physical examination," which would imply a lack of physical limitations, Dr. Swedberg's observations of [Plaintiff]'s condition and abilities are instructive in analyzing [Plaintiff]'s actual level of work-related functional abilities and limitations. His opinion regarding the specifics of those abilities and limitations are somewhat vague, however, and are not couched in vocationally defined terms. The limitations noted above have been crafted with an eye towards being consistent with Dr. Swedberg's recommendations, even if the recommendations themselves cannot be directly adopted.

(R. at 28).

Plaintiff correctly notes that this discussion does not include the "magic word[]" consistency. *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023); (Doc. 11 at 8–13). But that alone does not doom the ALJ's opinion. The Court must read the decision "as a whole," and, elsewhere in his opinion, the ALJ expressly

9

compared Dr. Swedberg's findings to other evidence in the record. *Brian M. v. Comm'r of Soc. Sec.*, No. 1:23-cv-130, 2024 WL 514462, at *9 (S.D. Ohio Feb. 9, 2024) (quoting *William G. v. Comm'r of Soc Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022)).

For instance, the ALJ discussed medical records diagnosing Plaintiff with "lower back pain, cervical and lumbosacral spondylosis, and cervical, thoracic, lumbosacral, and pelvic segmental and somatic dysfunction." (R. at 24 (citing R. at 438, 471, 580)). Then, the ALJ compared those diagnoses to Dr. Swedberg's opinion, which concluded that Plaintiff "maintained full [] strength, intact grip strength, normal range of motion, and a normal gait[.]" (*Id.* at 24–25 (citing R. at 617–24)). Additionally, the ALJ weighed Dr. Swedberg's finding that Plaintiff's memory was "good" against Plaintiff's subjective reports of memory limitations. (R. at 25–26 (*comparing* R. at 48 *with* R. at 622)). Still more, the ALJ found Dr. Swedberg's "mild findings" on Plaintiff's back, shoulder, and knee issues congruous with Plaintiff's relatively conservative treatment history for these impairments. (*See* R. at 27 ("Despite [Plaintiff's] complaints of back pain, the medical record does not reflect any significant or ongoing treatments for his physical conditions, with less than a year of chiropractic care, rather than more typical medical care . . . and no more than mild findings on diagnostic imaging." (citing R. at 617–26)); *id.* (comparing imaging and examinations from Dr. Swedberg's evaluation to other evidence in the record and concluding Plaintiff had "mild findings" for his shoulder and knee issues (citing R. at 617–26))). At bottom, these discussions show the ALJ compared Dr. Swedberg's opinion with "other medical and nonmedical sources" in the record, as required by the regulations. *Elizabeth A.*, 2023 WL 5924414, at *4 (emphasis and internal quotation removed).

Though the ALJ could have been clearer in his wording, his imprecision alone is not an error. An ALJ does not need to provide "a specific level of detail" in his analysis of the consistency

factor and must do only what the circumstances of each claim necessitates. *Timothy B.*, 2023 WL 3764304, at *7 (citing *Chad T. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-52, 2022 WL 4355001, at *8 (S.D. Ohio Sept. 20, 2022)). Here, the ALJ clearly evaluated the consistency of Dr. Swedberg's opinion by comparing his findings to other medical evidence and Plaintiff's subjective accounts of his symptoms. That is all the ALJ had to do. *See Sasha M. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2101, 2023 WL 1793536, at *6–8 (S.D. Ohio Feb. 7, 2023) (determining the ALJ properly evaluated an opinion for consistency and supportability, even though she did not use those "magic words," where "her line of reasoning addressed both"); *James R. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3667, 2023 WL 6605915, at *5–6 (S.D. Ohio Oct. 10, 2023) (concluding an ALJ's opinion, when read as a whole, properly evaluated the consistency of a medical opinion); *Elizabeth A.*, 2023 WL 5924414, at *5 (finding an ALJ properly analyzed consistency where the ALJ discussed medical records that were inconsistent with the medical opinion earlier in the decision); *cf. Samantha F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-2480, 2024 WL 3427188, at *5 (S.D. Ohio July 16, 2024) (finding the ALJ's consistency analysis lacking where the ALJ's decision did not compare a medical opinion against other record evidence of migraines), *report and recommendation adopted*, No. 2:23-cv-2480, 2024 WL 3742276 (S.D. Ohio Aug. 8, 2024). Therefore, Plaintiff's first assignment of error is **OVERRULED**.

  **B.**  **Treatment of Recommended Limitations**

Next, Plaintiff contends that the ALJ failed to explain why he did not adopt certain mental limitations from the state agency consulting psychologists' opinions. (Doc. 11 at 13–15). Once more, the Court finds no error.

At the initial level, Kristin Haskins, Psy.D., found that Plaintiff could carry out "short cycle tasks in a setting that does not have fast-paced demands and where [Plaintiff could] work away

11

from the distractions of others." (R. at 68 (cleaned up)). She also determined that Plaintiff could interact "superficially and occasionally" with others. (R. at 69). Finally, she concluded Plaintiff "can adjust to minor changes in the work setting," but "[m]ajor changes will need to be introduced in advance and then gradually phased in to allow the claimant time to adjust to the new expectations." (R. at 69). At the reconsideration level, Cindy Matyi, Ph.D., affirmed Dr. Haskins' findings. (R. at 76–77).

> The ALJ was "substantially persuaded" by their assessments:
>
> The [ALJ] finds these recommended levels of limitation supported by explanation and citations to the record and reasonably consistent with the medical record, as previously described, and has substantively adopted them as [Plaintiff]'s residual mental functional capacity. Not all of these recommendations are expressed in vocationally defined terms, however, such as the use of the term "superficial" to describe the quality of social interactions. The [ALJ] has therefore adapted the recommendations in the vocationally defined terms above, and in the case of the term superficial, provided a specific and vocationally relevant definition for the term, in order to comply with regulatory requirements without being inconsistent with either Dr. Haskins' or Dr. Matyi's opinions.

(R. at 28).

Ultimately, the ALJ determined Plaintiff could have only "occasional and superficial contact, as defined, with supervisors and co-workers"; "no contact with the general public"; and "[n]o teamwork, tandem tasks, conflict resolution or over-the-shoulder supervision." (R. at 23). The ALJ further restricted him to "[n]o more than occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustment to new expectations." (*Id.*). Despite Plaintiff's arguments to the contrary, (Doc. 11 at 13–16), the Court finds no material difference between this RFC determination and the psychologists' opinions.

To begin, Plaintiff says the ALJ failed to account for the psychologists' recommendation that Plaintiff receive "advance notice of major changes in the workplace." (Doc. 11 at 14). Not so. Instead of requiring notice for only "major changes," the ALJ limited Plaintiff to "occasional

changes" that all must be "explained in advance." (R. at 23). So the ALJ prescribed an even greater limitation than the psychologists recommended. *See Crystal S. v. Comm'r of Soc. Sec.*, No. 2:22-cv-508, 2023 WL 2241311, at *6 (S.D. Ohio Feb. 27, 2023) ("It is well-established that claimants are not prejudiced when an ALJ adopts a more restrictive RFC than an expert recommended." (internal quotation omitted)).

Next, Plaintiff asserts the ALJ failed to account for the psychologists' recommendation that changes must "be gradually phased in." (Doc. 11 at 14). Again, Plaintiff misreads the ALJ's decision. The ALJ required any changes in Plaintiff's "otherwise routine work setting" to be "explained in advance to allow time for adjustment to new expectations." (R. at 23). Necessarily, this means that changes must be "gradually phased in" to allow Plaintiff to adapt. (R. at 69 (saying Plaintiff must be given time to adjust "to new expectations")). Plus, the ALJ is not required to "adopt a state agency psychologist's opinion verbatim." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (cleaned up). Here, the ALJ found the psychologists' opinions "substantially" persuasive but also noted that some of their recommendations were not "expressed in vocationally defined terms." (R. at 28). As a result, the ALJ reworded their opined limitations in his RFC. (*Id*). Notably, the ALJ's translation of this restriction does not conflict with the psychologists' recommendation—or otherwise justify a reversal of the decision. *See Damon J. v. Comm'r of Soc. Sec.*, No. 3:23-cv-36, 2024 WL 193658, at *7–8 (S.D. Ohio Jan. 18, 2024) (overruling a statement of errors and finding the ALJ's RFC was not inconsistent with a psychologist's opinion), *report and recommendation adopted*, No. 3:23-cv-36, 2024 WL 1257257 (S.D. Ohio Mar. 25, 2024); *Bills v. Comm'r of Soc. Sec.*, No. 1:22-cv-180, 2023 WL 5616018, at *6–7 (E.D. Tenn. Aug. 30, 2023) (finding a remand not warranted where the ALJ's RFC "sufficiently account[ed]" for a doctor's opined supervision limitations).

13

Lastly, Plaintiff takes aim at the ALJ's limitations on his ability to work with others. (Doc. 11 at 15). Specifically, he contends the ALJ erred by not adopting the psychologists' limitation to a work setting where Plaintiff "can work away from the distractions of others." (*Id.* (citing R. at 23, 68, 76)). But the ALJ limited Plaintiff to only occasional and superficial contact with coworkers and supervisors and no contact at all with the general public. (R. at 23). Even more, the ALJ found Plaintiff could not have jobs involving teamwork, tandem tasks, conflict resolution, or over-the-shoulder supervision. (*Id.*). Other courts have found that these types of limitations adequately account for a recommendation of working away from others. *Damon J.*, 2024 WL 193658, at *8 ("Elimination of 'tandem' work obviously precludes 'work with others.'"); *Andrew E. v. Comm'r of Soc. Sec.*, No. 2:24-cv-276, 2025 WL 724606, at *7 (S.D. Ohio Mar. 6, 2025) (finding limitations to avoid tandem work and not interact with the public sufficiently accounted for a recommendation that the claimant "work away from others," but remanding on other issues); *Chad M. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1215, 2024 WL 1930748, at *5 (S.D. Ohio May 1, 2024) (finding an RFC was supported by substantial evidence where it made some alterations to the psychologists' wording of limitations, including not adopting a recommendation of working away from others). So too here. And because the ALJ effectively adopted this opined limitation, he did not have to explain his findings any further. *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746, 2023 WL 4991918, at *8 (S.D. Ohio Aug. 4, 2023) (saying an ALJ is required to "'explain why an opinion was not adopted' only 'if the RFC assessment conflicts with an opinion from a medical source'" (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996))), *report and recommendation adopted*, 734 F.Supp.3d 729 (S.D. Ohio 2024).

All told, the ALJ's RFC does not materially differ from the psychologists' opined limitations. Rather, it is within the ALJ's "zone of choice." *Felisky v. Bowen*, 35 F.3d 1027, 1035

14

(6th Cir. 1994).  Although Plaintiff may have preferred a different RFC, the ALJ adequately explained the reasoning behind his decision and supported it with substantial evidence.  Plaintiff's second assigned error is **OVERRULED**.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Statement of Errors (Doc. 11) is **OVERRULED**, and **AFFIRMS** the Commissioner's decision.  The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

IT IS SO ORDERED.


Date:   March 18, 2025                                      /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE